**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **BRIAN NASH**, <br><br> Plaintiff, <br><br> v. <br><br> **NEAR NORTH AMERICA, INC.**, *et al.*, <br><br> Defendants. | Civil Action No. 24-6623 (ZNQ) (JBD) <br><br> **OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court upon a Motion to Dismiss (the "Motion", ECF No. 13) filed by Defendants Laurent Castaillac ("Castaillac") and Gladys Kong ("Kong") (collectively, "Defendants").[1] Defendants filed a brief in support of the Motion. ("Moving Br.", ECF No. 13-6.) Plaintiff Brian Nash ("Plaintiff") filed a brief in opposition ("Opp. Br.", ECF No. 14) to which Defendants replied, ("Reply Br.", ECF No. 15).

  The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court finds that it lacks personal jurisdiction over Defendants. As a result, the Court will deny Defendants' Motion and instead order Plaintiff to show cause why this matter should not be transferred under 28 U.S.C. § 1631.

---

[1] The Complaint names four additional defendants, but they were dismissed by the Superior Court of New Jersey, Monmouth County. (ECF No. 1-5.)

1

I.      **BACKGROUND AND PROCEDURAL HISTORY**

This action arises out of Plaintiff's alleged retaliatory termination in violation of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-3. Plaintiff is a citizen of New Jersey and the former Vice President of Business Development at Defendant Near North America, Inc. ("NNA"). (Compl. ¶¶20–21.) Former defendant NNA, a Delaware corporation with its principal place of business in Pasadena, California, was in the business of purchasing and reselling consumer data. (*Id.* ¶2, 22.) Defendant Kong was NNA's Chief Operating Officer (*id.* ¶36) and Defendant Castaillac was NNA's Vice President of Sales, (*id.* ¶35) both of whom are residents of California.

Plaintiff began working for NNA on April 18, 2022, as Senior Director of Business Development. (*Id.* ¶68.) Plaintiff worked remotely from his home in New Jersey, at least "during the last several months of [his] employment." (Brian Nash Decl., ECF No. 14-1.)[2] According to Plaintiff, he was hired to "increase [NNA's] market presence and drive sales." (*Id.* ¶7.) On October 1, 2022, Plaintiff was promoted to Vice President of Business Development. (Compl. ¶69.)

According to the Complaint, in August and September 2022, Plaintiff raised concerns to leadership about NNA's noncompliance with certain California data protection laws, regulations and standards. (*Id.* ¶72.) For example, Plaintiff alleges that NNA "frequently failed to take adequate security measures to protect the data it stores, such as encrypting data, limiting employee access to data, requiring employee to use VP to access data, requiring employees to change passwords, [and] utilizing multi-factor authentication." (*Id.* ¶60.) Plaintiff was allegedly

---

[2] *See, e.g.*, *Dudhwala v. Choice Hotels Int'l Servs. Corp.*, Civ No. 22-873, 2022 WL 4300219, at *2–4 (D.N.J. Sept. 19, 2022) ("When evaluating a motion to dismiss for lack of personal jurisdiction, courts may consider facts outside of the complaint," including "declarations for relevant factual support.").

"assured" that NNA "would be fully compliant by January 2023" but NNA instead remained noncompliant. (*Id.* ¶¶74–76.) In January and February 2023, Plaintiff objected to NNA's noncompliance during group sales meetings and in writing via email to Defendant Castaillac. (*Id.* ¶¶77, 79.)

On March 2, 2023, Castaillac terminated Plaintiff's employment over the phone, stating that Plaintiff was not a "good cultural fit." (*Id.* ¶¶86, 88.) On September 18, 2023, Plaintiff filed a single-count Complaint in the Superior Court of New Jersey, Monmouth County, in which he alleged a violation of CEPA. (*Id.* ¶¶96–107.) In December 2023, all three "Near" Defendants filed for relief under Chapter 11 of the Bankruptcy Code and the matter was stayed. (ECF No. 1-2, Ex. B.) On March 29, 2024, the matter was dismissed without prejudice for lack of prosecution. (ECF No. 1-5, Ex. E.) On April 2, 2024, the Superior Court, Monmouth County, reinstated the Complaint against Defendants Castaillac and Kong. (ECF No. 1-6, Ex. G.) On May 31, 2024, Defendants Castaillac and Kong removed the matter to this Court on diversity jurisdiction grounds (Notice of Removal, ECF No. 1) and subsequently filed their Motion on July 12, 2024.

## II.     SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and the value of the controversy exceeds $75,000. (*See* Notice of Removal, ¶¶14–21.)

## III.    LEGAL STANDARD

A complaint may be subject to dismissal for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "If the district court does not hold an evidentiary hearing, the plaintiff[] need only establish a prima facie case of

personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotations and citation omitted). And "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003).

Defendants may contradict allegations "through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, Civ. No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)). Additionally, "by accepting a plaintiff's facts as true when a motion to dismiss is originally made, a court is not precluded from revisiting the issue if it appears that the facts alleged to support jurisdiction are in dispute." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

## IV. DISCUSSION

Defendants move to dismiss the Complaint in the first instance for lack of personal jurisdiction under Rule 12(b)(2). (Moving Br. at 5.) Alternatively, Defendants move to dismiss the Complaint for failure to state a claim under Rule 12(b)(6), arguing that Plaintiff's CEPA claim fails as a matter of law. (*Id.* at 8.) As personal jurisdiction is a threshold matter, the Court will first address Defendants' Motion under Rule 12(b)(2).

### A. PERSONAL JURISDICTION

First, Defendants argue that Plaintiff has not established that the Court has general jurisdiction over Defendants because Defendants are domiciled in California. (*Id.* at 5–6.) Defendants contend that the Complaint is "silent" as to their domicile and further that service of process was effectuated in California. (*Id.* at 7.) Moreover, Defendants argue that Plaintiff has

4

failed to establish that the Court has specific jurisdiction over Defendants because Plaintiff's allegations do not arise from Defendants' contacts with New Jersey. (*Id.*) Defendants claim that Plaintiff has failed to allege that Defendants "purposefully directed" their activities at the state of New Jersey.

Plaintiff argues that the Court has specific jurisdiction because Defendants committed "intentional wrongdoing" when they terminated Plaintiff's employment in retaliation for protected activities. (Opp'n Br. at 12.) According to Plaintiff, in CEPA cases, "specific jurisdiction exists over non-resident individual defendants who participated in the allegedly retaliatory decision on which the plaintiff based his CEPA claim." (*Id.*) Moreover, Plaintiff argues that Defendants aimed their wrongful conduct towards New Jersey and the "brunt of the harm" was felt by Plaintiff in New Jersey. (*Id.* at 12–13.)

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). "New Jersey['s] long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)). Here, the parties do not seem to dispute the Court's lack of general jurisdiction. The Court will therefore determine whether it can exercise specific jurisdiction over Defendants.

The specific jurisdiction inquiry is tripartite. *See O'Connor*, 496 F.3d at 317. First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'" *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). That is, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253. "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Burger King Corp., v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, if the two prior conditions are satisfied, a court may exercise specific personal jurisdiction should it otherwise "comport with 'fair play and substantial justice.'" *Id.* at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)).

In the employment context, jurisdiction over a defendant employee must be "assessed individually." *See Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000). "As a general rule, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity." *Nelligan v. Zaio Corp.*, Civ No. 10-1408, 2011 WL 1085525, at * 3 (D.N.J. Mar. 21, 2011) (quoting *Nicholas v. Saul Stone & Co.*, Civ. No. 97–860, 1998 WL 34111036 (D.N.J. June 30, 1998), *aff'd.,* 224 F.3d 179 (3d Cir. 2000)).

Here, for the reasons stated below, the Court finds that it lacks personal jurisdiction over Defendants. Plaintiff claims that Defendants' "decision to terminate [P]laintiff's New Jersey employment in retaliation for his protected activities" is sufficient to establish specific jurisdiction. (Opp'n Br. at 12.) These activities include Defendant Castillac notifying Plaintiff via telephone of his termination (Brian Nash Decl., ¶17) and Defendant Kong mailing Plaintiff a termination

6

letter to his New Jersey address (*id*. ¶18). These activities, however, are insufficient to support minimum contacts as Defendants' contacts with New Jersey "were a necessary part of their employment." *See Bangura v. Pennrose Mgmt. Co.*, Civ No. 09-4017, 2010 WL 2539419, at * 3 (D.N.J. June 15, 2010) (holding that sending work-related emails to the forum did not constitute purposeful availment for the purposes of personal jurisdiction). That is, "[t]he necessity of communicating with an employee who happens to work in New Jersey cannot be said to show that the supervisors purposefully directed their activities at New Jersey." *Id*. Both Castaillac and Kong "supervised employees in New Jersey, and, as such, were required to have contact with New Jersey for the purposes of fulfilling their professional responsibilities." *Id*. That Kong mailed a letter to Plaintiff's home in New Jersey does not suffice to establish "purposeful availment" and neither does Castaillac's call to Plaintiff while he was in New Jersey. *See Magill v. Elysian Glob. Corp.*, Civ. No. 20-06742, 2021 WL 1221064, at *7 (D.N.J. Apr. 1, 2021) (granting motion to dismiss for lack of personal jurisdiction where the plaintiff's physical location in New Jersey was the only factor that connected the dispute to New Jersey and noting "[p]laintiff's claims against [d]efendants would be identical if he lived anywhere else in the world" as "[a]ll of [p]laintiff's work and the entire nature of [d]efendants' business was performed online with world-wide scope").[3]

---

[3] Plaintiff further claims, for the first time in his opposition brief and accompanying declaration, that "Kong hired [him] to work in New Jersey and leverage his New Jersey location to market [NNA] to ad agencies and media companies in New York City" and that "Castaillac supervised [P]laintiff's meetings with [NNA's] New Jersey customers such as Verizon and TD Bank." (Opp'n Br. at 13 n. 3; Brian Nash Decl. ¶¶7,10.) Plaintiff also alleged in his certification however that he worked in New Jersey "during the last several months of [his] employment" but does not indicate where he worked throughout his employment. Regardless, these additional activities do not implicate Defendants Kong and Castaillac as individuals because there is no allegation that they themselves work, or ever worked, in New Jersey, or that they individually availed themselves of New Jersey in a way that is separate from their roles as officers of a corporation. *See Higgins v. Newsmax Broad. LLC*, Civ No. 23-03628, 2024 WL 3064844, at * 6 (finding insufficient allegations to exercise personal jurisdiction over individual defendants where the Court found the individual defendants never worked in New Jersey and the company did not have any New Jersey offices).

Even the most liberal reading of the Complaint demonstrates to the Court that Defendants' only "purposeful conduct" toward New Jersey consisted of communicating with Plaintiff during his employment and to inform him of his termination. The Complaint has not demonstrated that Defendants had significant contacts with New Jersey such that it "specifically targeted New Jersey through business activities beyond merely employing a New Jersey resident." *Crosson v. TMF Health Quality Institute*, Civ No. 20-18800, 2023 WL 2609048, at * 6 (D.N.J. Mar. 23, 2023) (finding a plaintiff failed to establish specific jurisdiction where the defendants' only connection to New Jersey was the plaintiff). In other words, the Complaint does not sufficiently allege a relationship which arose "out of contacts that the defendant[s] [themselves] create[d] with [New Jersey." *Id*. (quoting *Walden v. Fiore*, 571 U.S. 277, 284-85 (2014)).

The Court reaches the same conclusion under the *Calder* effects test.[4] Although Plaintiff felt the brunt of his termination in the state in which he lived; *Calder* cannot be met based merely on the Plaintiff's residence in the forum state. *Walden v. Fiore*, 571 U.S. 277, 285–86 (2014) (explaining that "the plaintiff cannot be the only link between the defendant and the forum"). Plaintiff has not shown that Defendants "expressly aimed [their] tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Industries*, 155 F.3d at 265–66. At best, Plaintiff alleges that Defendants committed an unlawful act against a New Jersey resident. Plaintiff "points to no specific activity that indicates that [Defendants] targeted [their] actions at *New Jersey*, as opposed to [Plaintiff] himself." *Dunn v. Parker*, Civ No. 21-17351, 2022 WL 1553333, at * 6 (D.N.J. May 17, 2022). Accordingly, absent allegations or

---

[4] When an intentional tort is alleged, the effects-test may be used to determine personal jurisdiction. *See Calder v. Jones*, 465 U.S. 783 (1984). This requires a plaintiff to show that "the defendant committed an intentional tort, the plaintiff "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort" and "the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *IMO Industries v. Kiekert AG*, 155 F.3d 254, 255–56 (3d Cir. 1998).

evidence of Defendants' purposeful targeting of New Jersey, the Court finds that it lacks personal jurisdiction over Defendants.[5]

Given the circumstances, rather than dismiss the Complaint in this instance as Defendants seek, the Court will instead Order Plaintiff to show cause in writing by March 31, 2025 as to why this matter should not be transferred to the appropriate District Court in California under 28 U.S.C. § 1631.

## V.     CONCLUSION

For the reasons stated above, the Court will DENY WITHOUT PREJUDICE Defendants' Motion and instead order Plaintiff to show cause why this matter should not be transferred to the appropriate District Court in California.  An appropriate Order will follow.

Date: February 28, 2025

                                                                            s/ Zahid N. Quraishi
                                                                            **ZAHID N. QURAISHI**
                                                                            **UNITED STATES DISTRICT JUDGE**

---

[5] Because the Court finds that it lacks personal jurisdiction, it does not reach the issue of whether Plaintiff fails to state a claim for relief under Rule 12(b)(6).